UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MURCHINSON LTD., EOM MANAGEMENT
LTD., NOMIS BAY LTD., and BPY LIMITED,

                 Plaintiffs,

        -against-

NANO DIMENSION LTD., YOAV STERN, AMIT
DROR, SIMON ANTHONY-FRIED, CHANNA
CASPI, ODED GERA, RONI KLEINFELD, J.
CHRISTOPHER MORAN, YOAV NISSAN-
COHEN, and IGAL ROTEM,

                 Defendants.

Case No. 1:23-cv-03658 (JLR)

**OPINION AND ORDER**

JENNIFER L. ROCHON, United States District Judge:

On May 1, 2023, Murchinson Ltd., EOM Management Ltd., Nomis Bay Ltd., and BPY Limited (collectively, "Plaintiffs" or "Murchinson") initiated this action against corporate defendant Nano Dimension Ltd. ("Nano"), and individual defendants Yoav Stern, Amit Dror, Simon Anthony-Fried, Channa Caspi, Oded Gera, Roni Kleinfeld, J. Christopher Moran, Yoav Nissan-Cohen and Igal Rotem (collectively, the "Individual Defendants," and together with Nano, "Defendants"). Plaintiffs assert one claim under New York's anti-SLAPP statute, N.Y. Civ. Rights Law §§ 70-a, 76-a, seeking to recover costs, fees, and compensatory and punitive damages arising from a prior federal securities action that Nano initiated in this Court and that has since been dismissed. *See generally* Dkt. 1 ("Complaint" or "Compl."); *Nano Dimension Ltd. v. Murchinson Ltd.*, 681 F. Supp. 3d 168, 176 (S.D.N.Y. 2023), *aff'd*, 102 F.4th 136 (2d Cir. 2024) (the "Federal Litigation").

Defendants now move to dismiss the Complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(2) and Rule 12(b)(6).[1]  Dkt. 62.  For the reasons set forth below, the Court GRANTS Defendants' motion to dismiss for failure to state a claim under Rule 12(b)(6).

## BACKGROUND[2]

Plaintiffs are "long term shareholders of Nano" and "the largest beneficial owners of Nano common stock, collectively holding approximately 5.7% of its outstanding shares." Compl. ¶ 2.  Plaintiffs have been vocal critics of Nano's directors, accusing them of "mismanaging" the company and "causing financial loss to shareholders."  *Id.*  Defendant Nano is an Israeli corporation whose common stock is traded on the U.S. market as American Depository Shares ("ADSs").  *Id.* ¶ 3.  The Individual Defendants "act[ed] as members of Nano's Board of Directors" (the "Board"), and "Defendant Stern [was] also Nano's Chief Executive Officer and Chairman of the Board."  *Id.*  "[A]ll Individual Defendants reside in Israel, except for Defendant Moran, who resides in California, and Defendant Stern[,] who resides in Florida."  *Id.*

On January 22, 2023, "Plaintiffs delivered a letter to Nano demanding that it convene a special general meeting of shareholders" to amend the company's corporate charter, remove four incumbent directors including Defendant Stern, and elect two independent directors.

---

[1] Defendants originally moved to dismiss the Complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) but represented at oral argument that they are no longer seeking dismissal on that basis.  *See* Dkt. 113 ("Oral Argument Transcript" or "Tr.") at 8:10-13, 23:5-24:18.

[2] Unless otherwise noted, the facts stated herein are taken from the Complaint and accepted as true for purposes of this motion.  *See Empire Merchs., LLC v. Reliable Churchill LLLP*, 902 F.3d 132, 139 (2d Cir. 2018); *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56-57 (2d Cir. 2016).

*Id.* ¶ 5. "Nano, directed by the Individual Defendants, refused to call the shareholders meeting," *id.*, and "[o]n February 13, 2023, Plaintiffs delivered notice to Nano's shareholders to independently convene the special meeting [in March 2023] in accordance with Israel's Companies Law," *id.* ¶ 6; *see id.* ¶ 3.

Leading up to the special meeting, "Plaintiffs presented their position through a series of press releases and other public disclosures," which, among other things, criticized Defendant Stern and the Board for their alleged mismanagement and self-entrenchment at the expense of shareholders, and "advocat[ed] for [Defendant Stern's] removal and for the election of new directors." *Id.* ¶ 6. Multiple independent proxy advisory services supported Plaintiffs' proposals and recommended that shareholders vote to remove Defendants Stern, Gera, Rotem, and Nissan-Cohen from the Board. *Id.* ¶¶ 7-8. At the special meeting in March 2023, Nano's shareholders voted to approve Plaintiffs' proposals and remove the four Board members, after which the Individual Defendants "caused Nano to commence litigation in the Courts of Israel to block the implementation of the shareholder vote." *Id.* ¶ 9.

On March 27, 2023, Nano initiated the Federal Litigation against Anson Advisors Inc., Anson Funds Management LP, and Anson Management GP LLC (collectively, "Anson"); Boothbay Fund Management LLC, Boothbay Absolute Return Strategies, LP, and Boothbay Diversified Alpha Master Fund, LP (collectively, "Boothbay"); and the instant Plaintiffs. *See generally* Complaint, *Nano*, 681 F. Supp. 3d 168 (No. 23-cv-02566), ECF No. 1. Anson "is another shareholder who has publicly criticized" the Board, Compl. ¶ 13, and "Plaintiff Murchison is the investment manager for [Boothbay] with a power of attorney for their shares," *id.* ¶ 12. In its complaint, Nano alleged, among other things, that Plaintiffs were acting with Anson and Boothbay as a "group" holding more than 5 percent of Nano ADSs, and that this had not been properly disclosed in their Schedule 13D filings in a purported

violation of section 13(d) of the Securities Exchange Act of 1934, 15 U.S.C. § 78m(d).  *See*
Compl. ¶¶ 11-15; *Nano*, 681 F. Supp. 3d at 177, 180-81; *see also* 15 U.S.C. § 78m(d)(3)
(defining a "group" as "two or more persons act[ing] . . . for the purpose of acquiring,
holding, or disposing of securities of an issuer").  Plaintiffs maintain that Nano's various
claims, including a state-law contract claim, were "meritless," Compl. ¶¶ 13, 15, and that
"[t]he alleged 'group'" is a "desperate fiction contrived by Nano in a bid to block or silence
participation in corporate governance," *id.* ¶ 14.

On July 10, 2023, this Court dismissed Nano's securities claims in the Federal
Litigation and declined to exercise supplemental jurisdiction over Nano's remaining state-law
claims.  *Nano*, 681 F. Supp. 3d at 194-95.  With regard to Nano's securities claim against
Boothbay, the Court found that the operative complaint "fail[ed] to plead that Boothbay was
part of a 'group' or otherwise held over five percent of securities in Nano."  *Id.* at 184-85.
The Court also dismissed as moot Nano's securities claims against Anson and Murchinson in
light of their filing of amended Schedule 13D disclosures.  *Id.* at 185-90.  Nano appealed the
dismissal of the claims against Anson and Murchinson, and on May 20, 2024, the Second
Circuit affirmed this Court's judgment.  *See Nano*, 102 F.4th at 139; *see also id.* at 143
("[Anson and Murchinson] did not attempt to obtain control of Nano and . . . adequately
complied with Section 13(d)'s disclosure requirements.").

On May 1, 2023, during the pendency of the Federal Litigation, Plaintiffs initiated this
separate action.  *See* Compl.  Plaintiffs represented at oral argument that they filed a separate
action, instead of a counterclaim and crossclaim, because they had filed a motion to dismiss
the Federal Litigation, which was granted and then appealed to the Second Circuit.  *See*
Dkt. 113 ("Oral Argument Transcript" or "Tr.") at 27:17-28:1.  On August 9, 2023,
Defendants moved to dismiss the Complaint in the present action its entirety.  *See* Dkt. 62;

4

Dkt. 65-1 ("Br."). On August 11, 2023, the Court granted the parties' joint request for a stay of discovery pending resolution of the motion to dismiss and adjourned the initial pretrial conference *sine die*. Dkt. 67 at 4. Plaintiffs filed their response in opposition to Defendants' motion on September 8, 2023, Dkt. 71 ("Opp."), and Defendants filed a reply on September 26, 2023, Dkt. 72 ("Reply"). Some or all of the parties were involved in separate litigation in New York state court, the Israeli courts, and Delaware Chancery Court, and provided periodic updates to the Court. *See* Tr. at 7:7-13; *see, e.g.*, Dkts. 82, 85. The parties also represented that they were engaged in settlement discussions at various points. *See, e.g.*, Dkts. 79, 91. After the parties informed the Court that an Israeli court had issued a decision regarding the implementation of the shareholder vote, *see* Dkt. 89, and after adjournments were granted to permit the parties to engage in settlement discussions, *see, e.g.*, Dkt. 92, the Court held oral argument on Defendants' motion to dismiss on April 24, 2025, *see generally* Tr. *See also* Tr. at 7:1-13 (Defendants' counsel noting that Delaware Chancery Court decision was entered less than thirty days before oral argument and "[t]hat's one reason why you're seeing these large gaps in time").

## DISCUSSION

Defendants move to dismiss Plaintiffs' anti-SLAPP claim under Rule 12(b)(2) for lack of personal jurisdiction over the Individual Defendants and under Rule 12(b)(6) for failure to state a claim. *See* Dkt. 62 at 1; Br. at 2-4. Defendants previously sought dismissal pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction, *see* Dkt. 62, but represented at oral argument that they now concur with Plaintiffs that the Court has ancillary jurisdiction over this action. *See* Compl. ¶ 4; Tr. at 7:14-8:13. Even though the parties now agree that this Court has subject matter jurisdiction, "courts . . . have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party."

*Arbaugh v. Y&H Corp.*, 546 U.S. 500, 501 (2006) (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999)). The Court will therefore address subject matter jurisdiction first and then move to Defendants' grounds for dismissal. With respect to the dismissal grounds, the Court will consider Defendants' Rule 12(b)(6) motion prior to Defendants' Rule 12(b)(2) motion, as the Court "indisputably has personal jurisdiction" over Nano and "all [D]efendants collectively challenge the legal sufficiency of . . . [Plaintiffs'] cause of action." *Chevron Corp. v. Naranjo*, 667 F.3d 232, 246 n.17 (2d Cir. 2012).

## I.    The Court Has Subject Matter Jurisdiction over Plaintiffs' Anti-SLAPP Claim

"'Federal courts are courts of limited jurisdiction' that 'possess only that power authorized by Constitution and statute,'" *Hendrickson v. United States*, 791 F.3d 354, 358 (2d Cir. 2015) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)), "which is not to be expanded by judicial decree," *Kokkonen*, 511 U.S. at 377. Accordingly, "[a] case is properly dismissed for lack of subject matter jurisdiction . . . when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen*, 511 U.S. at 377 (first citing *Turner v. Bank of N. Am.*, 4 U.S. (4 Dall.) 8, 11 (1799); and then citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 182-83 (1936)).

Here, the Court does not have original jurisdiction over Plaintiffs' present anti-SLAPP action, which arises under state law and involves nondiverse parties. However, the parties assert that this case falls within the Court's ancillary jurisdiction. Ancillary jurisdiction is "a creature of common law," *Williams v. Pfeffer*, 117 F. Supp. 2d 331, 333 n.4 (S.D.N.Y. 2000) (quoting *Futura Dev. of P.R., Inc. v. Estado Libre Asociado de P.R.*, 144 F.3d 7, 9 n. 1 (1st

Cir. 1998)), that "recognizes federal courts' jurisdiction over some matters (otherwise beyond their competence) that are incidental to other matters properly before them," *Kokkonen*, 511 U.S. at 378; *see also Garcia v. Teitler*, 443 F.3d 202, 208 (2d Cir. 2006) ("Without the power to deal with issues ancillary or incidental to the main action, courts would be unable to 'effectively dispose of the principal case nor do complete justice in the premises.'" (quoting *Morrow v. District of Columbia*, 417 F.2d 728, 738 n.36 (D.C. Cir. 1969))). "[T]he Supreme Court has instructed that ancillary jurisdiction may be exercised 'for two separate, though sometimes related, purposes: (1) to permit disposition of claims that are, in varying respects and degrees, factually interdependent by a single court, and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees.'" *Garcia*, 443 F.3d at 208 (quoting *Kokkonen*, 511 U.S. at 379-80). In 1990, Congress partially codified the first branch of the doctrine of ancillary jurisdiction in 28 U.S.C. § 1367, which provides that "district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within [the district court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a); *see Peacock v. Thomas*, 516 U.S. 349, 354 n.5 (1996); *Garcia,* 443 F.3d at 206-08; *Epperson v. Ent. Express, Inc*., 242 F.3d 100, 108 (2d Cir. 2001) (observing that "Congress codified much of the common law of ancillary jurisdiction as part of 'supplemental jurisdiction' in 28 U.S.C. § 1367" for claims "premised on factual interdependence"). The party asserting jurisdiction carries the burden of demonstrating that a suit "fit[s] into either of the two branches of ancillary jurisdiction." *Demopoulos v. Anchor Tank Lines, LLC*, 117 F. Supp. 3d 499, 513 (S.D.N.Y. 2015); *accord Peacock*, 516 U.S. at 355.

To begin, the Court had subject matter jurisdiction over Nano's securities claims in the related Federal Litigation, which was pending at the time of the filing of the present action. *See Nano*, 681 F. Supp. 3d at 180 ("Both of [Nano]'s federal claims arise under [15 U.S.C. § 78m(d)] . . . ."); 15 U.S.C.A. § 78aa ("The district courts . . . shall have exclusive jurisdiction . . . of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter . . . ."). Although some out-of-Circuit courts "have refused to rely on the existence of subject matter jurisdiction in one action to provide supplemental jurisdiction over claims in a related action," "[t]his distinction . . . has never troubled [the Second Circuit]." *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 335 (2d Cir. 2006) (collecting cases); *see also In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 510 F. Supp. 2d 299, 323 (S.D.N.Y. 2007) ("*Achtman* described the outer limits of the 'same case or controversy' doctrine, given that it addressed a case with no independent federal claim but one related to a *different* case that had federal claims."). Accordingly, the Court may exercise supplemental jurisdiction over Plaintiffs' present related state anti-SLAPP claim if it forms part of the "same case or controversy" as Nano's securities claims in the Federal Litigation. The Court finds that it does.

The Second Circuit "ha[s] held that disputes are part of the 'same case or controversy' within § 1367 when they 'derive from a common nucleus of operative fact.'" *Achtman*, 464 F.3d at 335 (quoting *Promisel v. First Am. Artificial Flowers, Inc.*, 943 F.2d 251, 254 (2d Cir. 1991)). "The 'common nucleus' standard hails originally from *United Mine Workers of America v. Gibbs*," which was decided prior to the partial codification of ancillary jurisdiction in the supplemental jurisdiction statute, but "was retained by nearly all the Circuits to interpret the statute's 'case or controversy' language." *Id.*; *see United Mine Workers of Am. v. Gibbs*, 383 U.S. 715 (1966). "In determining whether two disputes arise from a 'common nucleus of

operative fact,'" the Second Circuit has "traditionally asked whether 'the facts underlying the federal and state claims substantially overlapped'" or whether "the federal claim necessarily brought the facts underlying the state claim before the court." *Hamilton Rsrv. Bank Ltd. v. Democratic Socialist Republic of Sri Lanka*, 134 F.4th 73, 80 (2d Cir. 2025) (quoting *Achtman*, 464 F.3d at 335); *see also id.* ("This is so even if the state law claim is asserted against a party different from the one named in the federal claim." (quoting *Achtman*, 464 F.3d at 335)).  Here, the "common nucleus" standard is satisfied under both inquiries.

First, Plaintiffs' anti-SLAPP claim "substantially overlaps" with Nano's securities claim.  "While there would surely be some facts at issue in the [state-law] action that were not directly implicated in the . . . securities litigation," this Court is "already familiar with the relevant facts and legal issues" and the "overall strategy" of the parties in the Federal Litigation, which a court would need to assess to resolve Plaintiffs' anti-SLAPP claim. *Achtman*, 464 F.3d at 336 (quoting *Alderman v. Pan Am World Airways*, 169 F.3d 99, 102 (2d Cir. 1999)) (holding that district court had supplemental jurisdiction over malpractice action that arose from earlier securities action).  As the Second Circuit has explained in the context of a state-law claim for attorneys' fees, a district court's "total familiarity with the subject matter of the [underlying] suit" and the related issues subsequently disputed by the parties under state law are "clear hallmarks of a common nucleus of operative fact." *Id.* (alteration in original) (quoting *Itar-Tass Russian News Agency v. Kurier, Inc.*, 140 F.3d 442, 445 (2d Cir. 1998)).  Second, Nano's federal claims "necessarily brought the facts underlying" Plaintiffs' state-law claim before the Court: Plaintiffs' core allegation is that the Federal Litigation was premised on a "bogus" securities claim and thus "commenced, and . . . continued, without a substantial basis in fact and law" in violation of the New York anti-SLAPP statute. Compl. ¶ 11; *cf. Kriss v. Bayrock Grp. LLC*, No. 10-cv-03959 (LGS) (DCF), 2017 WL

4023351, at *1, *3 (S.D.N.Y. Sept. 12, 2017) (finding common nucleus of operative fact between federal claim and state-law counterclaim for abuse of process where defendant alleged that federal claim was premised on false allegations). Thus, "in the same way that" a state-law claim for abuse of process, malpractice, or attorneys' fees "shares a common nucleus of operative fact with the underlying [federal] action," *Kriss*, 2017 WL 4023351, at *3, Plaintiffs' anti-SLAPP claim shares a common nucleus of operative fact with Nano's securities claims.

Accordingly, the Court finds that Plaintiffs' anti-SLAPP claim in the instant case and Nano's securities claims in the Federal Litigation derive from a common nucleus of operative fact and thus form part of the same case or controversy pursuant to § 1367. Although the exercise of supplemental jurisdiction is discretionary, and Nano's federal claims have already been dismissed, Plaintiffs' anti-SLAPP claim implicates issues of federal preemption, *see infra* pp. 10-15, which renders the exercise of supplemental jurisdiction appropriate here, *see Baylis v. Marriott Corp.*, 843 F.2d 658, 665 (2d Cir. 1988) ("One factor that may sometimes favor retaining pendent jurisdiction is when a state claim is closely tied to questions of federal policy and where the federal doctrine of preemption may be implicated." (citing *Gibbs*, 383 U.S. at 727)); *accord Favourite v. 55 Halley St., Inc.*, 381 F. Supp. 3d 266, 285 (S.D.N.Y. 2019).

## II.    Plaintiffs Have Failed to State a Claim

The Court turns next to Defendants' motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6). Among other things, Defendants argue that Plaintiffs' anti-SLAPP claim must be dismissed "because claims arising under federal law cannot serve as predicates for an anti-SLAPP action." Br. at 8. The Court agrees.

"On a motion to dismiss under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint and draw all possible inferences from those allegations in favor of the plaintiff." *Ortiz v. Pace Univ.*, 761 F. Supp. 3d 695, 699 (S.D.N.Y. 2025) (citing *York v. Ass'n of the Bar of the City of N.Y.*, 286 F.3d 122, 125 (2d Cir. 2002)). "This requirement 'is inapplicable to legal conclusions.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Because "a complaint must 'state a claim to relief that is plausible on its face,'" *Miller v. McDonald*, 130 F.4th 258, 264 (2d Cir. 2025) (quoting *Ashcroft*, 556 U.S. at 678), "[d]ismissal is appropriate when 'it is clear from the face of the complaint . . . that the plaintiff's claims are barred as a matter of law." *Biocad JSC v. F. Hoffmann-La Roche*, 942 F.3d 88, 93 (2d Cir. 2019) (omission in original) (quoting *Parkcentral Glob. Hub Ltd. v. Porsche Auto. Holdings SE*, 763 F.3d 198, 208-09 (2d Cir. 2014)).

By way of background, "'SLAPP is an acronym for strategic lawsuits against public participation.' A number of states, including New York, 'have enacted anti-SLAPP statutes with the idea that they provide breathing space for free speech on contentious public issues,' and 'decrease the chilling effect of certain kinds of libel litigation and other speech-restrictive litigation.'" *Heilbut v. Cassava Scis., Inc.*, No. 24-cv-05948 (JLR), 2025 WL 919654, at *6 (S.D.N.Y. Mar. 26, 2025) (internal quotation marks omitted) (first quoting *Carroll v. Trump*, 590 F. Supp. 3d 575, 580 (S.D.N.Y. 2022); and then quoting *La Liberte v. Reid*, 966 F.3d 79, 85 (2d Cir. 2020)). In relevant part, New York's anti-SLAPP law provides that litigants may recover damages from any person who "commenced or continued" a SLAPP suit against them "without a substantial basis in fact and law." N.Y. Civ. Rights Law § 70-a(1)). As this Court recently held in *Heilbut v. Cassava Sciences, Inc.*, a substantive New York anti-SLAPP claim based on an earlier defamation action may be brought in federal court without running afoul of federal procedural rules. *See* 2025 WL 919654, at *8-10; s*ee also Bobulinski v. Tarlov*,

758 F. Supp. 3d 166, 186 (S.D.N.Y. 2024) (similar).  However, the alleged SLAPP action

underlying *Heilbut* and other cases that have permitted such claims in federal court arose

under state law with the federal court exercising diversity jurisdiction, and the Court thus had

no occasion to address whether a federal claim could serve as the basis of a New York anti-

SLAPP claim.  Here, however, Plaintiffs seek to impose anti-SLAPP liability on the

Defendants in federal court based on Nano's prosecution of a federal securities lawsuit.

> "Under the Supremacy Clause of the Constitution, '[w]here a state statute conflicts

with, or frustrates, federal law, the former must give way.'"  *Potts v. Rawlings Co., LLC*, 897

F. Supp. 2d 185, 195 (S.D.N.Y. 2012) (alteration in original) (citation omitted) (quoting *CSX

Transp., Inc. v. Easterwood*, 507 U.S. 658, 663 (1993)); *see* U.S. Const. art VI, cl. 2 ("[T]he

Laws of the United States . . . shall be the supreme Law of the Land . . . .").  "A state law may

be conflict preempted if it 'stands as an obstacle to the accomplishment and execution of the

full purposes and objectives of Congress' or 'interferes with the method by which the federal

statute was designed to reach this goal.'"  *Coal. for Competitive Elec. v. Zibelman*, 906 F.3d

41, 55 (2d Cir. 2018) (citations omitted) (first quoting *Oneok, Inc. v. Learjet, Inc.*, 575 U.S.

373, 377 (2015); and then quoting *Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 494 (1987)).

Applying these principles, the Court finds that Plaintiffs' anti-SLAPP claim is barred by the

Supremacy Clause.  Allowing a state anti-SLAPP statute to apply to a federal cause of action

would risk the inconsistent application of federal law by subjecting citizens asserting identical

federal claims to differing anti-SLAPP regimes from state to state.  As applied to the instant

case, for example, a plaintiff may be less likely to bring a federal securities action in New

York than would a citizen in a state with no anti-SLAPP statute and no risk of anti-SLAPP

liability.  Permitting state anti-SLAPP statutes to apply to federal causes of action would alter

incentive structures for federal acts in a manner that was not intended by Congress in enacting

laws intended to be uniform across the country. *Cf. Bull. Displays, LLC v. Regency Outdoor Advert., Inc.*, 448 F. Supp. 2d 1172, 1181 (C.D. Cal. 2006) ("To permit a defendant sued on a federal claim in federal court in California to bring an anti-SLAPP motion . . . , when a defendant sued on the same federal claim in federal court in another state could not do so, would make the available defenses to [a] federal claim dependent on the location of the federal court and the substance of the forum state's laws" and "frustrate federal courts' interest in . . . uniformity of federal law."); *S. Middlesex Opportunity Council, Inc. v. Town of Framingham*, No. 07-cv-12018, 2008 WL 4595369, at *9 (D. Mass. Sept. 30, 2008) (concluding that Massachusetts anti-SLAPP law's substantive fee-shifting provision is "inapplicable to . . . federal claims" because it "is in direct conflict with certain provisions of federal law"). More burdensome anti-SLAPP standards would frustrate congressional intent by chilling the exercise or vindication of certain federal rights. *Cf. Mathiew v. Subsea 7 (US) LLC*, No. 17-cv-03140, 2018 WL 1515264, at *10 (S.D. Tex. Mar. 9, 2018) (barring application of Texas anti-SLAPP defense to federal employment-discrimination claim because doing so "would allow prohibited discriminatory conduct" and "frustrate the purpose of Title VII" in contravention of Supremacy Clause), *report and recommendation adopted*, 2018 WL 1513673 (S.D. Tex. Mar. 26, 2018) ; *see also S & R Dev. Ests., LLC v. Town of Greenburgh*, 336 F. Supp. 3d 300, 315 (S.D.N.Y. 2018) ("Allowing a state law to undermine a federal civil rights claim would 'transmute a basic guarantee into an illusory promise; and the Supremacy Clause of the Constitution insures that the proper construction may be enforced.'" (quoting *Howlett v. Rose*, 496 U.S. 356, 376 (1990))). While New York may have an "interest in protecting the free speech rights of its citizens on matters of public concern," *Mathiew*, 2018 WL 1515264, at *10, it "has no interest in dictating rules of . . . substance applicable to federal claims brought in federal court," *Fielder v. Sterling Park Homeowners Ass'n*, 914 F.

13

Supp. 2d 1222, 1231 (W.D. Wash. 2012) (quoting *Bull. Displays, LLC*, 448 F. Supp. 2d at

1182). And, contrary to Plaintiffs' arguments, the Court sees no basis to treat Section 13(d)

claims any differently than any other federal claim for purposes of the applicability of the

state anti-SLAPP statutes.

Accordingly, the Court joins every other federal court to have opined on the issue and

holds that the Supremacy Clause precludes the application of state-law anti-SLAPP statutes to

federal claims in federal court. *See, e.g.*, *Hilton v. Hallmark Cards*, 599 F.3d 894, 901 (9th

Cir. 2010) ("[A] federal court can only entertain anti-SLAPP special motions to strike [under

California law] in connection with state law claims . . . ."); *Nat'l Jewish Democratic Council

v. Adelson*, 417 F. Supp. 3d 416, 423, n.1 (S.D.N.Y. 2019) ("[A]nti-SLAPP statutes do not

apply to federal causes of action."); *Fielder*, 914 F. Supp. 2d at 1231 ("[A]nti-SLAPP statutes

are not applicable to federal claims."); *Ginx, Inc. v. Soho All.*, 720 F. Supp. 2d 342, 366

(S.D.N.Y. 2010) (rejecting New York anti-SLAPP claim and noting that "[i]n every other case

this Court has located, federal courts have declined to apply Anti–SLAPP statutes to federal

claims" and "[n]o federal court of which I am aware has ever awarded anti-SLAPP sanctions

because of a federal claim in a federal forum"); *Bull. Displays, LLC*, 448 F. Supp. 2d at 1180

("[T]he [California] anti-SLAPP statute . . . does not apply to federal question claims in

federal court . . . ."); *Mathiew*, 2018 WL 1515264, at *10 ("[T]he [Texas anti-SLAPP statute]

does not apply to Plaintiff's federal discrimination and retaliation claims under Title VII.");

*Dr.'s Data, Inc. v. Barrett*, No. 10-cv-03795, 2011 WL 5903508, at *2 (N.D. Ill. Nov. 22,

2011) ("The [Illinois anti-SLAPP statute] applies to [the plaintiff's] state law claims only.");

*S. Middlesex Opportunity Council*, 2008 WL 4595369, at *9 ("There is no support for

applying the anti-SLAPP statute to federal claims."); *see also* Tr. at 31:9-12 (Court: "Do you

have any case . . . that supports your argument that an anti-SLAPP suit could be brought

against a federal cause of action?"  Plaintiff: "No, I do not . . . .").  Indeed, as a court recently opined in *Biden v. Ziegler*, "[b]lack letter law is crystal clear that an anti-SLAPP motion cannot be used against a federal cause of action."  No. 23-cv-07593, 2024 WL 4452492, at *2 (C.D. Cal. Sept. 9, 2024); *see also* 19 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 4509 (3d ed. 2025) (stating that while courts come to differing conclusions on whether anti-SLAPP claims are permissible in federal court with respect to state-law claims, courts generally agree that state anti-SLAPP statutes do not apply when the underlying suit involves a federal claim).

Because the Federal Litigation cannot serve as the basis for Plaintiffs' sole anti-SLAPP claim, the Court dismisses Plaintiffs' Complaint for failure to state a claim.[3]

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss for failure to state a claim under Rule 12(b)(6).  Accordingly, the Complaint is hereby DISMISSED with prejudice.  The Clerk of Court is respectfully directed to terminate the motion at Dkt. 62 and close the case.

Dated: May 14, 2025
     New York, New York

                        SO ORDERED.

                        JENNIFER L. ROCHON
                        United States District Judge

---

[3] Given this conclusion, the Court declines to address the Individual Defendants' additional argument that the Complaint should be dismissed for lack of personal jurisdiction. *See In re Bystolic Antitrust Litig.*, 583 F. Supp. 3d 455, 495 (S.D.N.Y. 2022) (declining to address personal jurisdiction arguments because court dismissed claims on the merits; collecting similar cases), *aff'd sub nom. CVS Pharm., Inc. v. Forest Lab'ys Inc.* (*In re Watson Lab'ys, Inc.*), 101 F.4th 223 (2d Cir. 2024).